J. Charles Hepworth [ISB No. 2878]
Andrew J. LaPorta [ISB No. 10483]
HEPWORTH HOLZER, LLP
537 W. Bannock Street, Ste. 200
P.O. Box 2582
Boise, Idaho 83701-2582
Telephone: (208) 343-7510
Fax No. (208) 342-2927
chepworth@HepworthHolzer.com
alaporta@HepworthHolzer.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PATRICIA RICHARDSON, mother of DONALD SCOTT MACRAE, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>BRYAN GREY, individually and McCALL AVIATION Inc., an Idaho corporation,<br><br>Defendants. | Case No. 1:23-cv-00375-DCN<br><br>**REPLY IN SUPPORT OF TRIPLETT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| LISA TRIPLETT, individually and as Special Administrator for the Estate of Donald Scott MacRae; AMANDA KEECH, JESSICA WEAVER, JEREMY MACRAE, NICHOLAS BONOMO, VINCENT BONOMO, JUSTIN MACRAE,<br><br>Plaintiffs,<br><br>vs.<br><br>BRYAN GREY, individually and McCALL AVIATION Inc., an Idaho corporation, | Case No. 1:23-cv-00417-DCN |

REPLY IN SUPPORT OF TRIPLETT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 1

|           |
|-----------|
| Defendants. |

Defendants' opposition confirms there is no genuine issue of material fact. Defendant Brian Grey admits he chose the return route mid-flight, let his passengers control his decisions, failed to prepare a written flight in violation of McCall Aviation's Operations Manual, and failed to calculate the Cessna's performance data before departure. Grey's admissions, combined with Defendants' experts' concessions on standards related to preflight and mountain flying, establish liability as a matter of law. Defendants' only relevant defense is speculation that the downdraft Grey encountered was not a mountain wave, but a wind gust unrelated to the terrain.[1]

## ARGUMENT

A. **Legal Standards**.

   1. <u>**The FAA establishes the standard of care**</u>.

Federal Aviation Regulations (FARs) are part of the "general federal standard of care" that pilots cannot operate aircraft in a "careless or reckless manner[.]" *Montalvo v. Spirit Airlines*, 508 F.3d 464, 472 (9th Cir. 2007). Although the violation of a specific FAR may establish negligence per se, whether a pilot breached the standard of care is usually determined by the "overall concept" that a pilot cannot operate an airplane in a "careless or reckless manner." *Abdullah v. American Airlines, Inc.*, 181 F.3d 363, 369 (3rd Cir. 1999).

---

[1] Defendants argue the "wind gust" theory because an experience pilot should know that mountain waves are expected at mountain ridges, and mountain flying standards are designed to avoid downdrafts completely.

REPLY IN SUPPORT OF TRIPLETT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 2

The general rule is that FAA publications like the AIM, Advisory Circulars, and flight manuals are evidence of the standard of care. *Wojciechowicz v. U.S.*, 582 F.3d 57, 64 (1st. 2009). The AIM is an FAA publication that explains how FARs apply in different circumstances. *Id.*; *Foster v. United States*, 728 F.Supp.3d 473,483 (E.D. Ky. 2024) (AIM "constitutes evidence" of the standard of care). Pilots and air traffic control manuals are also "an indication" of the standard of care. *Foster*, 728 F.Supp.3d at 483. Expert testimony, such as that from the parties' respective aeronautical engineers, is often helpful to the jury in applying FAA standards to the facts. *Abdullah*, 181 F.3d at 371-72.

   2. **McCall Aviation is subject to higher standards.**

Although the AIM and flight manuals are usually only evidence of the standard of care, the FAA imposes an added duty on air carriers like McCall Aviation to ensure their pilots have the AIM and "Aircraft Flight Manuals" or their equivalent. 14 C.F.R. §135.81.

   B. **Grey failed to plan the flight.**

There is no genuine issue of material fact that Grey failed to perform an proper preflight under 14 C.F.R. 91.103 because it is undisputed that Grey (1) chose the return route to McCall after passing Soldier Bar, (2) failed to file a flight plan in violation of McCall Aviation's Operations Manual, and (3) failed to review the Cessna's performance capabilites—and the relevant data that impacted those capabilities—before the flight.

   1. **Grey admits he chose the return route after passing Soldier Bar.**

14 C.F.R. § 91.103 requires pilots to know "all available information" about the flight before takeoff, including the terrain, weather, and aircraft performance. Aircraft

performance is determined by several factors, like temperature and altitude. Grey could only have known this information if he knew the flight route. The route is the foundational piece before other information can be collected and calculated.

Grey chose the draining route because it *looked* doable, but this shows he failed to plan the return route.[2] Because he failed to plan the route, he could not plan his cruising altitude, know the temperature at that altitude, the barometric pressure, or the topography. Without that information, he could not calculate the optimal climbing rate. He relied instead on real-time information gathering during the flight, a climb rate calculation.[3] Defendants do not dispute these facts. Grey's failure to obtain this information before the flight violated 14 C.F.R. § 91.103 in violation of the standard of care.

## 2. Grey's failure to file a flight plan violated McCall Aviation's Operations Manual.

McCall Aviation's Operations Manual required Grey to file either an FAA or a "company" flight plan before the flight, both of which require disclosing the route.[4] Defendants ignore the Operations Manual and argue that VFR flights do not need a flight plan under 14 C.F.R. §91.153(a)(5).[5] Defendants are correct, but attack a straw man to distract from the Operations Manual, which is part of the standard of care because McCall Aviation is an air carrier under 14 C.F.R. Part 135.

---

[2] Declaration of Counsel in Support of Triplett Plaintiffs' Motion for Summary Judgment(Dkt. 47-2), **Exhibit E**. Declaration of Colin Sommer in Support of Triplett Plaintiffs' Motion for Summary Judgment("Sommer Dec."), ¶ 4, Dkt. 47-3.
[3] Declaration of Bryan Grey, ¶ 8, Dkt, 50-2.
[4] Memorandum in Support of Triplett Plaintiffs' Motion for Summary Judgment("Plaintffs' Memo. in Supp."), pp. 6-7 Dk. 47-4. Dec. of Counsel, **Exhibit C**, DEF00094.
[5] Def. Resp. Memo. pp. 8-9.

REPLY IN SUPPORT OF TRIPLETT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 4

The FAA requires air carriers to create and use operational manuals in their flight operations. 14 C.F.R. §135.21(a)(operations manual must be approved by the FAA). McCall Aviation's Operations Manual requires pilots flying VFR flights "solely" in Idaho to file "Company Flight Plans."[6] Company Flight Plans require information like the flight route, cruising altitude, and true airspeed. Pilots must submit the flight plan to McCall Aviation. Defendants have not produced a company flight plan in discovery or any evidence that such a plan ever existed.

Grey's failure to submit a Company Flight Plan in violation of the Operations Manual is further evidence that Grey violated FAA preflight requirements.

Grey claims that whiteboards showing the flight was scheduled is evidenced the flight was planned.[7] The fact the flight was scheduled does not create a genuine issue of material fact that it was sufficiently planned under 14 C.F.R. §91.103.[8]

### 3. **Grey failed to review the Cessna's performance capabilities.**

    i. <u>Grey did not review the Cessna's performance capabilities before the flight</u>.

Grey needed to calculate the Cessna's performance abilities based on the relevant conditions before takeoff. Grey claims he knew the Cessna's performance abilities because he reviewed them "multiple times *as part of the training I received on the aircraft*."[9] His training occurred in May 2021, four months before the crash. The only reasonable

---

[6] Dec. of Counsel, **Exhibit C**, DEF00094.
[7] Grey Dec. ¶ 7.
[8] Sommer noted in his investigation there was no evidence that Grey obtained a weather report before the flight. Sommer Dec., **Exhibit A**, p. 9. Typically, whether a pilot has accessed whether reports can be established through logs, electronic or otherwise. Defendants rely on Grey's testimony.
[9] Grey Dec. ¶ 10 (emphasis added).

REPLY IN SUPPORT OF TRIPLETT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 5

inference is Grey reviewed the formulas for calculating the Cessna's performance capabilities in May, but did not learn the relevant information for the flight, like the altitude, that needed to be applied to those formulas. This is not disputed. Grey's failure to review the performance capabilities of the Cessna before the flight, and to calculate the performance capabilities, violated 14 C.F.R. §91.103.

Defendants argue it is "illogical" to require Grey to know more about the Cessna than what he learned during training.[10] Defendants are confused about preflight requirements. Aircraft performance cannot be determined until the circumstances of the flight are known. For instance, the "information" pilots must know under §91.103 includes "aircraft performance under expected values" such as "aircraft weight, and wind and temperature." *Id.*(b)(2). Thus, Aircraft performance is determined based on facts unique to each flight. Grey's training that occurred four months before the crash was insufficient preflight because it told him nothing about the flight, like the weight and weather. Grey's failure to know those facts violated §91.103.

This is confirmed by McCall Aviation's training material, which requires pilots to perform extensive calculations before takeoff. McCall Aviation taught pilots that aircraft performance is impacted by factors like barometric pressure, and that pilots need to learn to "interpolate" performance data "before you need it."[11] They also need to "[c]alculate density altitude before your flight."[12] The preflight was lots of review and math.

---

[10] Def. Resp. Memo. p. 13.
[11] Dec. of Counsel, **Exhibit B**, MCA002216.
[12] *Id*. MCA002214.

REPLY IN SUPPORT OF TRIPLETT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 6

So, it is not "illogical" to require Grey to review the Cessna's performance capabilities before the flight; it is the standard of care, a standard that McCall Aviation taught, or at least it did when its training material was approved by the FAA.

> ii. Grey's failure to pilot the Cessna based on its optimal climb rate is evidence that he did not review the Cessna's performance capabilities.

Defendants argue if it were always a violation of 14 C.F.R. §91.9 to fly an aircraft at any speed or climb rate other than the optimal speed or rate, then the regulation would be violated on every flight.[13] Defendants argument is flawed for two reasons.

First, Grey's failure to fly at the optimal climb rate is used here primarily as evidence that he did not perform an adequate preflight. To fly at the optimal climb rate requires preflight calculations that consider the conditions, i.e., weight and weather. Grey's failure to fly at the optimal rate, even when his and his passengers lives were increasingly in peril, is evidence that he did not know the optimal rate.[14]

Second, it is a breach of the standard of care when the pilot violates so many safety standards that only the optimal operation of the aircraft will avoid disaster. Defendants' concern about mass negligence actions based on §91.9 is fictional given most pilots follow minimum safety standards, like minimum altitude.

**C. Grey failed to follow mountain flying rules.**

There is no genuine issue of material fact that Grey violated standards for mountain flying because he attempted to fly from a lower altitude to a higher altitude

---

[13] Def. Resp. Memo. p. 14.
[14] Grey complains there is confusion over speed calculations, but he does not explain how those impact this motion or the opinions against him. Nor does the Defendants' experts share his concerns.

REPLY IN SUPPORT OF TRIPLETT PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 7

when attempting to cross the ridge, failed to approach the ridge at 1,000 feet above the ridge's elevation, and failed to anticipate downdrafts.[15]

1. **Grey failed to approach the mountain at sufficient minimum altitude**.

    i. <u>Grey needed to approach the mountain ridge 1,000 feet higher in altitude than the ridge start at the beginning of the canyon</u>.

Sommer testified that the minimum safe altitude for crossing the ridge was 1,000 feet, and Grey needed to reach that altitude as he entered the canyon. Reaching the minimum altitude a few miles from the ridge adds further protection against downdrafts. Sommer testified that Grey violated FAA standards by violating these minimum standards, and further, by attempting a long climb from a lower to higher elevation in the canyon.[16] Sommer bases his opinions on FAA publications.

McCall Aviation's training is similar, as it tells pilots that they are safe if they are "higher than the ridge" and can glide over the ridge even if the engine is idling.[17] McCall Aviation's training mirrors the AIM, which instructs pilots to maintain "[s]ufficient altitude…to permit gliding to a safe landing in the event of engine failure."[18] The AIM emphasizes preflight planning and knowledge of the terrain as "prerequisites" for mountain flying.

    ii. <u>Grey violated 14 C.F.R. § 91.119</u>.

---

[15] Sommer Dec. ¶ 6. Dkt. 47-3.
[16] *Id*.
[17] Dec. of Counsel, **Exhibit B**, MCA02219.
[18] https://www.faa.gov/air_traffic/publications/atpubs/aim_html/chap7_section_6.html (last accessed August 12, 2025).

REPLY IN SUPPORT OF TRIPLETT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 8

Defendants contend that Plaintiffs have not shown that Grey was subject to a minimum altitude at the time of the crash.[19] Defendants ignore that Sommer cites FAA publications and articulates standards that apply to pilots in mountain flying, and which mirror the training Grey allegedly received from McCall Aviation.

Defendants also argue that 14 C.F.R. §91.119 is the applicable FAR, but that FAR does not apply to mountain flying. See *Wojciechowicz,* 582 F.3d at 64 (The AIM is an FAA publication that explains how FARs apply in different circumstances). FAA publications, including the AIM, make it clear that mountain flying is dangerous and requires special safety standards, especially when passengers are involved. And even if applied §91.119, Grey violated it because he was thousands of feet below the ridge, not 500 feet above it. However Grey's conduct is viewed, it violated FAA standards.

2. **Downdrafts are expected at mountain ridges**.

   i. Downdrafts are "always" expected.

Downdrafts are known and foreseeable hazards in mountainous terrain. The AIM warns to "*Always* be prepared to cope with a downdraft and turbulence." The FAA instructs pilots under VFR rules to take extra precautions in mountain flying, like filing flight plans, making robust preflight plans, and adjust approach angles.

McCall Aviation's training material on mountain flying attempts to eliminate the risks created by downdrafts in mountain flying. Pilots are warned that wind shear is

---

[19] Def. Resp. Memo. p. 11.

guaranteed to be at least 20 knots, and wind will be greater over mountains than in areas even just a few miles away.[20]

      ii. <u>Grey's claim that the downdraft was unforeseeable or not a mountain wave is not reasonable, relevant, and pure speculation</u>.

Grey claims that there "no reason" for him to expect a "powerful, severe, and sudden downdraft" before the crash.[21] This conflicts his own training and all FAA publications on mountain flying that instruct to "always" be ready for downdrafts.

He claims the downdraft, was not a mountain wave, but a wind gust. He compares it to downdrafts he has felt at the end of thunderstorms, but admits there was no thunderstorm. Grey's effort to distinguish between wind gusts, downdrafts, and mountain waves—which are also downdrafts—is unreasonable, and is not entitled to a reasonable inference. Even his own expert discusses mountain waves and downdrafts together.[22] Grey's unreasonable distinction should not preclude summary judgment.

**D. Plaintiffs raised causation in their opening brief**.

Defendants argue causation was not raised despite Plaintiffs arguing, "If Grey had flown at the proper altitude, he more likely than not would not have encountered any downdrafts, and the crash would not have occurred."[23] Plaintiffs also argue that if Grey had performed an adequate preflight, he would have known the mountain's elevation and planned accordingly, or opted for another route.[24] Sommer also testified at summary

---

[20] Dec. of Counsel, **Exhibit B**.
[21] Grey Dec. ¶ 9. Defendants also contend there is no authorty for the mountain flying rules, also published by the FAA. Def. Resp. Memo. p. 7.
[22] Dec. of Counsel, **Exhibit D**, pp. 8-9.
[23] Plaintiffs' Memo. in Supp. , p. 9 Dkt. 47-4.
[24] *Id*. p. 7.

REPLY IN SUPPORT OF TRIPLETT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 10

judgment that Grey's failure to perform a preflight was more likely than not a substantial factor in causing the crash.[25] Plaintiffs raised causation in their opening brief.

## CONCLUSION

The undisputed record, including Grey's own testimony, establishes that he violated FARs, the AIM, other FAA publications, McCall Aviation's Operations Manual and training material, and basic mountain flying rules. Defendants' opposition raises only immaterial disputes and speculation. Summary judgment on liability should be granted.

DATED August 12, 2025.

                                      HEPWORTH HOLZER, LLP

                                      By /s/ Andrew J. LaPorta
                                              J. Charles Hepworth
                                              Andrew J. LaPorta
                                              Attorneys for Plaintiffs

---

[25] Sommer Dec. ¶ 4, Dkt. 47-3.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to the following:

Stephen R. Thomas
Kenneth Shumard
HAWLEY TROXELL ENNIS & HAWLEY, LLP
877 W. Main Street, Ste. 200
P.O. Box 1617
Boise, ID 83701-1617
sthomas@hawleytroxell.com
kshumard@hawleytroxell.com

Jarom A. Whitehead
Michael J. Hanby, II
Pedersen Whitehead & Hanby
199 N. Capitol Blvd., #500
Boise, ID 83702
jwhitehead@pedersen-law.com
michael@pederson-law.com

DATED August 12, 2025.

/s/ Andrew J. LaPorta
Andrew J. LaPorta